# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

REYNALD LOPS, et al.,

        Plaintiffs,

v.                              CIV No. 00-1268 JP/LFG ACE

ALFRED HABERMAN, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the issue of whether Plaintiffs' attorneys, Dixon, Scholl & Bailey, P.A., have a conflict of interest that precludes them from taking the deposition of Cristen Van Horn ("Ms. Van Horn")[1] and/or from continuing to represent Plaintiffs in this litigation. Defense counsel raised the potential conflict during an emergency telephonic conference that was held on September 27, 2001. The Court was sufficiently concerned with the allegations of a conflict of interest that it issued a Memorandum Opinion and Order, on October 24, 2001, directing the parties to brief the issue.[2] [Doc. 192, 202.] In addition, because of the importance of the issue, the Court

---

[1] The Plaintiffs include Reynald Lops, and his spouse Victoria Lops, individually and on behalf of their minor children, Maria-Renee Lops and Victoria Lops, together with Mrs. Lops' son, Jacob Van Horn. Mrs. Lops also initially sued on behalf of Cristen Van Horn, who was a minor when this lawsuit was filed. However, after Ms. Van Horn turned 18, she elected not to pursue this litigation and her claims were dismissed in June 2001.

[2] Plaintiffs filed objections to the Court's October 24, 2001 Memorandum Opinion and Order, arguing that the Magistrate Judge does not have the authority to rule on Defendants' request to disqualify, Defendants do not have standing to raise the purported conflict of interest, and there is no factual basis to support an accusation of conflict because Plaintiffs' counsel never had an attorney-client relationship with Ms. Van Horn. [Doc. 199.] Chief Judge James A. Parker issued a Memorandum Opinion and Order on January 9, 2002, denying Plaintiffs' objections and concluding both that the magistrate judge has authority to rule on a motion to disqualify and that Defendants have standing, under these circumstances, to raise the issue. [Doc. 210.]

temporarily stayed all discovery and other proceedings pending a resolution of the alleged conflict. [Doc. 197.] The briefing on this issue now is complete. [Docs. 209, 213, 214]. No oral argument is necessary. This matter may be resolved on the parties' submissions. The Court concludes that a conflict of interest does, indeed, exist and that Plaintiffs' counsel should be disqualified from representing the Plaintiffs in this litigation for the reasons explained below. In addition, this decision addresses how Plaintiffs' current counsel should transfer certain work product materials to Plaintiffs' successor counsel.

### Pertinent Factual Allegations and Procedural History

Plaintiffs' Complaint asserts, *inter alia*, claims under 42 U.S.C. §§ 1981, 1983, 1985 and 1988, and 28 U.S.C. § 2201 and 2202 against a number of Defendants.[3] The gravamen of Plaintiffs' civil rights complaint is that Ms. Van Horn was improperly and illegally removed from her home and from the care, custody and control of Ms. Van Horn's stepfather, Plaintiff Reynald Lops ("Mr. Lops") and her mother, Plaintiff Victoria Lops ("Mrs. Lops"), following allegedly false allegations of physical abuse by Mr. Lops. The Complaint alleged that all Plaintiffs suffered deprivations of state and federal constitutional and statutory rights, and sought damages and injunctive relief for all Plaintiffs, including Ms. Van Horn.

In May 1997, when Ms. Van Horn was 15 years old, she claimed that Mr. Lops physically abused her. [Doc. 16, ¶ 53.] Mr. Lops admitted to disciplining Ms. Van Horn by spanking her with a belt but denied that the spanking was abusive.[4] Criminal charges were brought against Mr. Lops,

---

[3]After ruling on motions brought by Defendants, the District Court dismissed some of the claims and some Defendants.

[4]Photos taken sometime after the spanking show extensive bruising to Ms. Van Horn's buttock but there are also allegations that Ms. Horn hit herself after being spanked to create the bruising reflected in the photos.

and related neglect and abuse proceedings were initiated in Childrens' Court against both Mr. and Mrs. Lops. On August 18,1998, Mr. Lops entered an <u>Alford</u> plea to the felony crime of child abuse and was convicted of that offense.[5] Additionally, both Mr. and Mrs. Lops pled "no contest" to civil charges of neglect and abuse. Further, while in the custody of Defendant Children, Youth and Families Department ("CYFD"), Ms. Van Horn alleged that Mr. Lops had also sexually abused her. No criminal charges were ever brought against Mr. Lops for that alleged sexual abuse.

Mr. Lops is a Lt. Colonel in the United States Air Force. After his felony conviction, the Air Force initiated court martial proceedings against him arising out of the same conduct that led to the <u>Alford</u> plea and conviction and to the abuse and neglect proceedings. Following proceedings in a military tribunal in 1999 and 2000, Mr. Lops was acquitted and cleared of all Article XV charges by the Air Force. [Doc. 76.] In September 1999, Ms. Van Horn, who was in the custody of CYFD, purportedly communicated to her mother and Mr. Lops that Defendants had coerced and intimidated her into making false accusations against Mr. Lops. [Doc. 199, Ex. A.] This purported recantation led, in part, to the present lawsuit.

On August 31, 2000, Plaintiffs filed their original Complaint. [Doc. 1.] On October 30, 2000, Plaintiffs filed a First Amended Complaint. [Doc. 16.] The caption of Plaintiffs' Complaints reads in part:

> REYNALD LOPS, individually and on behalf of his minor daughter, MARIA-RENEE LOPS and VICTORIA LOPS, individually and on behalf of her minor daughters, CRISTEN VAN HORN, and MARIA RENEE LOPS, and JACOB VAN HORN,
> Plaintiffs . . .

---

[5]The term "Alford plea" is drawn from <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970), and may be used when a defendant does not admit guilt, but concedes that the State has and can present strong evidence of actual guilt, that is, evidence that the defendant committed the act charged. In an <u>Alford</u> plea, the defendant does not admit guilt, but does not contest the charge.

Plaintiffs' counsel, Mr. Scholl, explains that Mrs. Lops "initiated the complaint in this case for herself and to preserve rights belonging to her minor daughter. . . ." [Doc. 213, p. 7.]

In CYFD's Answer to the First Amended Complaint, filed November 17, 2000, attorney Felker (representing the CYFD Defendants) set forth an affirmative defense that Mrs. Lops had no right or legal authority to bring this action on behalf of Ms. Van Horn and furthermore that Plaintiffs' attorneys, Dixon, Scholl and Bailey, had a conflict of interest in their attempted representation of Ms. Van Horn. [Doc. 25, at p. 11.]

On November 28, 2000, the Court held a Fed.R.Civ. P. 16 scheduling conference. Mr. Felker raised the concern that Ms. Van Horn was about to turn 18 years old in December 2000 and that he understood that Ms. Van Horn had not consented to Mr. Scholl representing her, and that Mr. Scholl did not have the authority to act as her attorney. [Doc. 213, p. 10.] When questioned about his authority to proceed, Mr. Scholl "advised that it [the law firm] did not have direct contact with Ms. Van Horn and [to resolve the issue] wished to deliver a letter to her outlining information about the case, advising her of rights, providing contact information, and asking her for concurrence to proceed."[6] [Doc. 192, p. 2.] As Mr. Felker's clients knew where Ms. Van Horn could be contacted, he agreed to arrange for the delivery of this letter from Plaintiffs' counsel to Ms. Van Horn, and apparently did so in early December 2000.

On December 13, 2000, Ms. Van Horn contacted Mr. Scholl by telephone. [Doc. 213, p. 3.] She told Mr. Scholl that she not want to be involved in the case. [Doc. 213, p. 4.] In a letter, dated

---

[6]The Court's summary of what was said by Plaintiffs' counsel at the scheduling conference differs from Plaintiffs' apparent assertion that the Court instructed Plaintiffs' counsel to explain the lawsuit to Ms. Van Horn, the applicable statute of limitations and the effect of Ms. Van Horn's majority to her, and the accompanying inference that Plaintiffs' counsel merely followed the instructions of the Court with respect to what to tell Ms. Van Horn. [Doc. 192, 213, p. 3.]

December 15, 2000, Mr. Felker informed Mr. Scholl that when he delivered the letter to Ms. Van Horn, she made it clear that Mr. Scholl's "ostensible representation of her is/was contrary to her wishes . . . ." [Doc. 213, Ex. A.] Sometime after this discussion, Mr. Scholl prepared a pleading for Ms. Van Horn. It was an unopposed "pro se" motion and order of dismissal, which Ms. Van Horn executed. Apparently, about six months passed[7] before the motion was filed and the order submitted to the court. [Doc. 213, p. 4; Doc. 138.]

After she was dismissed from the lawsuit, Ms. Van Horn signed an affidavit on September 25, 2001, describing the sexual and physical abuse allegedly suffered by her at the hands of Mr. Lops, with the alleged knowledge and complicity of her mother Victoria Lops. Ms. Van Horn testified that she feared him and did not want the court to disclose her whereabouts to Mr. Lops, her mother or others. [Doc. 198.] She also stated in the affidavit that she was nervous about being around either her mother or her brother, Jacob Van Horn, who allegedly attempted to pressure her into recanting her previous accusations against Mr. Lops, and by doing so, could receive substantial financial gain in this lawsuit.

On September 27, 2001, the Court held an emergency telephonic hearing with counsel regarding Mr. Scholl's plans to take Ms. Van Horn's deposition. During that discussion, defense counsel raised the conflict of interest issue that led to this briefing.

### Pertinent Legal Rules and Standards

The control of an attorney's conduct in trial litigation is within the court's supervisory powers. Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1383 (10th Cir. 1994). Thus, a motion

---

[7]The motion appears to have been prepared around January 2001, since counsel approved the motion at that time. However, it was not filed until June 1, 2001.

to disqualify counsel is within a trial court's sound discretion and is subject to review under an abuse of discretion standard. <u>McEwen v. City of Norman, Okla.</u>, 926 F.2d 1539, 1550 (10th Cir. 1991); <u>Funplex Partnership v. FDIC</u>, 19 F. Supp. 2d 1201, 1206 (D. Colo. 1998). Moreover, a magistrate judge has the authority to rule on a motion to disqualify, because such motions are non-dispositive of the litigation. <u>Hutchinson v. Pfeil</u>, 105 F.3d 562, 565 (10th Cir.), *cert. denied*, 522 U.S. 914, 118 S.Ct. 298 (1997); <u>Hammond v. City of Junction City, Kansas</u>, 167 F. Supp. 2d 1271, 1288-89 (D. Kan. 2001.)

"[M]otions to disqualify are governed by the ethical rules announced by the national profession and considered 'in light of the public interest and the litigants' rights.'" <u>Cole</u>, 43 F.3d at 1383 (internal citation omitted). The generally accepted standards addressing disqualification of counsel are found in the ABA's Model Rules of Professional Conduct ("Model Rules") or in the precursor to the Model Rules known as the Model Code of Professional Responsibility and its accompanying canons and ethical considerations ("Model Code"). *See* <u>Mercedes v. Blue</u>, 2001 WL 527477, No. 00CIV.9225(RMB)(MHD) at *1 (S.D.N.Y. May 17, 2001) (discussing Model Rules). New Mexico, like most other states, patterned its Rules of Professional Conduct[8] on the ABA Model Rules.

In determining disqualification disputes, a court must consider the ethical rules, as well as the presumption in favor of a litigant's freedom to select counsel of one's choice. Indeed, the Fifth Circuit commented that while relevant local and national ethical rules provide a useful guide in deciding motions to disqualify, such rules are not controlling where an "inflexible application of a

---

[8]The Federal Court for the District of New Mexico adopted the New Mexico Rules of Professional Conduct. D.N.M. LR-Civ 83.9. Thus, this Court has considered the Rules, ABA comments, and the compiler's annotations to the Rules of Professional Conduct.

professional rule . . . would abrogate important societal rights, such as the right of a party to his counsel of choice and an attorney's right to freely practice her profession." FDIC v. U. S. Fire Ins. Co., 50 F.3d 1304, 1314 (5th Cir. 1995). The Second Circuit similarly cautioned that ethical rules should not be rigidly applied and that courts should engage in a "restrained approach" to attorney disqualification questions. Mercedes, at *1.

> The competing considerations that are to be weighed in the balance include the need, on the one hand, to maintain ethical standards in the legal profession and to avoid distortions in the substance and appearance at the trial, and on the other, to protect the litigant's freedom to select counsel of his choice.

Id.

A court should proceed with caution and circumspection when considering counsel's disqualification because motions of this nature may be "interposed for tactical reasons, and . . . even when made in the best of faith . . . inevitably cause delay." Mercedes,[9] at *2. Thus, the court must ensure that issues relating to disqualification are not raised for impermissible or purely tactical reasons.

---

[9]The Mercedes decision was not cited by the parties, nor is it binding on this Court. However, it is worth noting because of similarities between that case and this one. The Court in Mercedes also considered a motion to disqualify plaintiffs' counsel based on an alleged actual or potential conflict between parent and minor children. The plaintiff mother, in Mercedes, sued city and state defendants, under § 1983, on behalf of her two minor children. The mother was accused of mistreating her children and alleged that her children were wrongfully removed from her custody. The Court denied the request to disqualify counsel, but the case is distinguishable from the facts before me.

For example, in Mercedes, the Family and Criminal Courts dismissed all neglect and criminal charges against the mother. Id. at 4. In addition, there was no indication of any neglect or mistreatment by the mother after a one-year period when a guardian was in place. Id. Under those circumstances, the Court did not find a "discernible likelihood of a cognizable conflict of interest," or a conflict that could implicate the ability of the plaintiffs' attorneys to represent all three plaintiffs. Id. In contrast, this case presents a factual scenario where Mr. Lops, a named Plaintiff, pled guilty to criminal charges of physical abuse and both parents entered a "no contest" plea to the abuse and neglect charges. In addition, Ms. Van Horn has filed a more recent affidavit adding to her allegations that Mr. Lops sexually abused her as well as physically abused her. Therefore, while similar to Mercedes in many regards, this case requires a different result.

> Disqualification motions are subject to abuse for tactical purposes. They may require sometimes complex satellite litigation extraneous to the case before the court. Disqualification also deprives a client of counsel of its choice. . . . [D]isqualification is appropriate only if a violation of the Code of Professional Responsibility gives rise to a significant risk of trial taint.

Universal City Studios, Inc. v. Reimerdes, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000).

There are two primary Rules of Professional Responsibility that must be considered: 16-107, Conflict of Interest, and 16-109, Conflict of Interest, Former Client. The first rule prohibits an attorney from accepting representation of a client when the representation would directly or substantially affect another client adversely. NMRA 16-107. There is an exception to this rule that allows representation of client with competing interests when the lawyer reasonably believes representation will not be adverse to the other client, and when both clients, after consultation, consent to the representation. NMRA 16-107(A)(1 & 2). The exception is not applicable, under these facts, because Plaintiffs' counsel agrees that should the court find that the law firm represented Ms. Van Horn, the law firm would have to withdraw. [Doc. 179, p. 5.] Secondly, the exception is inapplicable because Ms. Van Horn does not consent.

Under 16-107, when a conflict is apparent at the outset, the attorney should simply decline representation. NMRA 16-107, ABA Comment. So, too, if a conflict arises after the representation has been undertaken, the lawyer should withdraw. NMRA 16-116. This rule is premised on the basic concept of loyalty to a client. Indeed, the ABA comments to Model Rule 16-107 states "[l]oyalty is an essential element in the lawyer's relationship with a client." The loyalty owed to a client outlasts the actual period of representation. In re Corn Derivative Antitrust Litig., 748 F.2d 157, 161 (3d Cir. 1984), cert. denied, 472 U.S. 1008, 105 S.Ct. 2702 (1985).

The second ethical rule at issue is Rule 16-109, Conflict of Interest, Former Client. A party seeking disqualification under this rule must provide specific facts to justify disqualification of counsel and cannot rely on speculation or conjecture.[10] <u>Funplex</u>, 19 F. Supp. 2d at 1206. Rule 16-109 of the Rules of Professional Conduct provides that an attorney who formerly represented a client in matter shall not:

> A.    represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation;[11] or

> B.    use information relating to the representation to the disadvantage of the former client except as Rule 16-106 would permit with respect to a client or when the information has become generally known.

Rule 16-109 NMRA.

In <u>Cole</u>, the Tenth Circuit explained that a party seeking to disqualify opposing counsel on the ground that there is a conflict of interest due to former representation has the burden of showing that: "(1) an actual attorney-client relationship existed between the moving party[12] and the [non-moving] counsel; (2) the present litigation involves a matter that is 'substantially related' to the

---

[10]Neither Ms. Van Horn nor the defendants filed a motion to disqualify the firm of Dixon, Scholl and Bailey. Rather, the issue arose in an emergency hearing, and the court directed briefing on the issue.

[11]To date, Ms. Van Horn has not provided any type of written consent or waiver with respect to Plaintiffs' counsel's continued representation of Plaintiffs.

[12]Ms. Van Horn has not actually moved for disqualification of counsel. Thus, she is not the "moving party." Defendants also did not formerly move to disqualify Plaintiffs' attorneys but Defendants argue in favor of disqualification. The Court has already rejected Plaintiffs' argument that Defendants do not have standing to raise the question on behalf of Ms. Van Horn. Chief Judge James A. Parker reasoned that Defendants may raise the issue under these circumstances "where the interests of the public are so greatly implicated that an apparent conflict of interest may tend to undermine the validity of the proceedings." [Doc. 210] (citation omitted).

subject of the movant's prior representation; and (3) the interests of the opposing counsel's present client are materially adverse to the movant." Cole, 43 F.3d at 1384.

The Court also should consider that an attorney's continuing duty of loyalty or confidentiality to a former client may preclude him from taking an adverse position to that former client. Thus, if Mr. Scholl represented Ms. Van Horn, the fact that he no longer represents her does not permit him to now take a position that would be adverse to her interests. Rule 16-108 provides that an attorney "shall not use information relating to representation of a client to the disadvantage of the client" without consent from the client after consultation. Rule 16-108(B) NMRA.

## Analysis

## I.    DISQUALIFICATION OF COUNSEL

### A.    *Rule 16-107: Conflict of Interest, Generally*

In September 2001, after Ms. Van Horn was dismissed from this lawsuit and after Mr. Scholl indicated Plaintiffs' intention to take Ms. Van Horn's deposition, defense counsel raised the issue of a possible conflict during an emergency discovery telephone conference with the Court. Defendants reported an alleged threat by Plaintiffs' counsel to "destroy" Ms. Van Horn during the deposition. [Doc. 213 at p. 17.] Plaintiffs respond that they do not and never have intended to destroy Ms. Van Horn. Instead, they assert that Ms. Van Horn's credibility is already destroyed due to various alleged conflicting stories she has told regarding Mr. Lops. Plaintiffs' counsel states that they merely wish to pin her down to one story. [Doc. 213 at p. 17.]

It is undeniable that Ms. Van Horn's testimony is pivotal to the outcome of this lawsuit. [Doc. 210, p. 4] A core issue in this litigation is whether Mr. Lops physically and sexually abused Ms. Van Horn. It seems obvious that the same attorney cannot zealously represent the interests of

the alleged abuser at the same time that he represents the alleged victim. Moreover, a lawyer may not serve two masters. <u>Perillo v. Johnson</u>, 79 F.3d 441, 447 (5th Cir. 1996).

Here, if Ms. Van Horn testifies in accord with her affidavit and if the fact finder determines her testimony is credible, then Plaintiffs' claims that Ms. Van Horn was improperly removed from the home will likely have no merit. Thus for Plaintiffs to succeed on many of their claims, Ms. Van Horn's credibility and testimony must be successfully challenged. Yet, if Ms. Van Horn was represented by Dixon, Scholl and Bailey, it would now be impossible for them to attack her testimony, credibility or character, due to their duty of loyalty to a former client. Given the apparent conflict between Ms. Van Horn and her stepfather and mother, it is hard to accept that this problem was not apparent from the outset. If Plaintiffs' counsel intended to accept representation of the other Plaintiffs, he should not have opted to represent Ms. Van Horn, even through her mother, in accordance with the requirements of Rule 16-107.

### B.    *Rule 16-109: Conflict of Interest, Former Client*

The critical inquiry under Rule 16-109 is whether an attorney-client relationship existed between Ms. Van Horn and Plaintiffs' lawyers. If there was such a relationship, Plaintiffs' counsel must be disqualified because there is no question that this matter is "substantially related" to the alleged "prior" representation of Ms. Van Horn. Indeed, rather than just being substantially related, it is the same lawsuit. The only difference is that Ms. Van Horn was once a Plaintiff, and now she is not. It also appears, without question, that the remaining Plaintiffs' interests are materially adverse to those of Ms. Van Horn as their interests lie in denying that Mr. Lops mistreated and abused Ms. Van Horn, while Ms. Van Horn's interests lie in confirming her prior statements and testimony that

she was abused.[13]  *See* <u>McDonald v. Hammons</u>, 936 F. Supp. 86, 87 (E.D.N.Y. 1996) (recognizing potential conflict of interest where "children were represented by counsel selected and retained by their parents in a case in which the parents' treatment of their children provides the central backdrop.")

Plaintiffs simply argue that no attorney-client relationship existed between Ms. Van Horn and Plaintiffs' counsel because Mr. Scholl represented Mrs. Lops, the mother, and because no confidential information was ever communicated by or to Ms. Van Horn.  Therefore, based on principles set out in <u>Cole v. Ruidoso</u>, Plaintiffs argue that Mr. Scholl did not represent Ms. Van Horn.  Finally, Plaintiffs also contend that Defendants' failure to raise the conflict of interest issue earlier warrants denial of their request.

### 1.    *Real Party In Interest*

The Court recognizes that Ms. Van Horn, as a minor, did not have the capacity to sue on her own behalf under New Mexico law and that her mother, Mrs. Lops, could bring claims both individually and on behalf of her daughter.  Plaintiffs assert that Mrs. Lops' decision to initiate a complaint to preserve her daughter's rights[14] does not create an attorney-client relationship between her minor daughter and attorneys hired by Mrs. Lops. [Doc. 213, p. 7.]  However, Plaintiffs provide no legal authority for this assertion.  The very fact that Mr. Scholl argues that the representation was to "preserve rights" for Ms. Van Horn belies the assertion that he did not represent her.  Plaintiffs

---

[13]Plaintiffs apparently agree that the only question to be determined under Rule 16-109 is whether an attorney-client relationship existed since their brief focuses primarily on that question and does not address, in any substance, the other two elements that must be established.

[14]Plaintiffs never explain what rights of Ms. Van Horn were being protected by the filing of this action. Instead, their argument pre-supposes that Ms. Van Horn had claims that she wanted protected and that her mother had to assert on her behalf.  It is possible that a more thorough exploration of this question early on could have alerted counsel to the existence of a potential conflict of interest.

seek, unconvincingly, to draw a distinction between representing the adult parent who brings the action for a minor, and representing both the mother and daughter. Moreover, accepting this argument would effectively mean that the mother, not the attorney, is actually representing the minor before the Court. As a matter of law, this is not allowed. A non-attorney parent who brings suit on behalf of a child must be represented by counsel. Even though the parent could represent oneself *pro se*, the parent cannot represent the child. Meeker v. Kercher, 782 F.2d 153, 154 (10th Cir. 1986). *See also* In re Schmidt, 122 N.M. 770, 773, 931 P.2d 1386, 1389 (1997) ("only two types of legal representation are recognized--litigants appearing pro se or those appearing through licensed counsel of record. They may not appear through unlicenced laymen, not even their parents[.]") Chisholm v. Rueckhaus, 124 N.M. 255, 257, 948 P.2d 707, 709 (Ct. App. 1997).

The Court concludes that Plaintiffs' counsel did represent Ms. Van Horn. First, there is legal authority for the proposition that a minor child, whose parent brings a lawsuit in the context of a medical malpractice action, is the real party in interest. Chisholm, 124 N.M. at 257-58, 948 P.2d at 709-10. Moreover, Plaintiffs admit that Ms. Van Horn was a party in interest, although they again argue, without providing legal authority, that Ms. Van Horn's status as a party in interest does not mean she had an attorney-client relationship with Plaintiffs' counsel.

Second, there are a number of pleadings and statements submitted by Plaintiffs' counsel confirming that Plaintiffs' counsel represented Ms. Van Horn's interests. Ms. Van Horn is named in the caption of the Complaint as a Plaintiff, and the preambles of the original and First Amended Complaints identify Ms. Van Horn as one of the parties bringing "their" complaint against Defendants. The Complaint is signed by Plaintiffs' counsel on behalf of Plaintiffs, and the request for monetary and injunctive relief is brought on behalf of all Plaintiffs. [Doc. 1, ¶ 27.] Plaintiffs later

filed a brief asserting that "all of the Plaintiffs have the clearly established liberty interest in the integrity of their family and keeping their family intact as well as to freely associate with one another as a family unit in order to protect their familial relationship." [Doc. 61, p. 7.] A common sense interpretation of that argument includes the view that Ms. Van Horn is one of the "Plaintiffs" to whom counsel is referring.

Also damaging to Plaintiffs' counsel's position is Mr. Scholl's statement in a December 5, 2000 letter to defense counsel:

> Inasmuch as Judge Garcia's words came on the heels of your oft stated position that I and Victoria Lops have 'absolutely no right whatsoever to make claims on behalf of Cristen Van Horn,' it struck me, maybe incorrectly, that he was gently nudging you away from your position and ***toward the reality that I do, indeed, represent Cristen Van Horn, through her mother.***

[Doc. 199, Ex. A; Doc. 213, Ex. A] (emphasis added). Again, a common sense reading of this statement by Mr. Scholl is that he believed he represented Ms. Van Horn, even if defense counsel was challenging his authority to represent her. It is notable that Plaintiffs' counsel never attempts to provide any other interpretation for his statement. The silence speaks volumes.

Mr. Scholl also communicated to Ms. Van Horn through a sealed letter that apparently explained some of her legal rights and also spoke to Ms. Van Horn on the telephone regarding the contents of that letter. It is hard to imagine how advising one of legal rights and outlining legal options is not within the ambit of an attorney-client relationship. Finally, Plaintiffs' counsel prepared a legal motion for Ms. Van Horn, specifically the motion and order of dismissal. [Doc. 213, p. 4.] Pertinent portions of that motion are as follows:

> I have read the Complaint and have had an opportunity to discuss it and this motion with any attorney of my choice.

> I have been made aware of and understand that my ability to bring these claims in the future is limited by time and that NMSA 2000 § 37-1-10 gives me one year after I turned 18 to refile these claims, or lose them.
>
> At this time, I do not desire to pursue those claims made on my behalf.

[Doc. 138.]

Even though the pleading recites that it was prepared "pro se," it is undisputed that Mr. Scholl prepared it for Ms. Van Horn. A fair reading of the motion indicates that Ms. Van Horn was provided legal advice by Mr. Scholl in reaching her decision to dismiss her claims in this lawsuit. This weighs heavily in favor of finding the existence of an attorney-client relationship between Ms. Van Horn and Mr. Scholl.

## 2.    *Confidential Communications and Contacts with Ms. Van Horn:*

Relying on Cole v. Ruidoso, Plaintiffs argue that because Ms. Van Horn did not submit any confidential information to Plaintiffs' counsel, no attorney-client relationship could have developed. The facts in Cole distinguish it from the present scenario. In Cole, the plaintiff argued that defense counsel should be disqualified from representing the school district because she, as principal of a school, had consulted with the school district's attorneys relating to disciplinary matters, as part of her job. Cole, 43 F.3d at 1382-83. Therefore, she asserted that she had an attorney-client relationship with those attorneys that precluded them from representing the school district in litigation that she initiated against it. The trial court, in Cole, concluded that the plaintiff had not demonstrated the existence of an attorney-client relationship under those circumstances and that even if there were such a relationship, the prior representation was not sufficiently related to the present matter. The Tenth Circuit affirmed. Id. at 1383.

It is true that the Tenth Circuit, in Cole, analyzed the disqualification issue in terms of whether the plaintiff had shown that she submitted confidential information to the attorney and whether she did so with the reasonable belief that the lawyer was acting as her attorney. Id. at 1384. However, that case, unlike this litigation, involved a situation where there was no formal signed contract between the parties and/or no payment of fees. Instead, the Court essentially was asked to examine other factors that might imply an attorney-client relationship. Here, it is undisputed that there was an actual attorney-client relationship between Plaintiffs and their counsel, and as discussed *supra*, the Court has concluded that Ms. Van Horn was one of the named Plaintiffs.

Plaintiffs also argue generally that an attorney-client relationship could not have existed under circumstances where Mr. Scholl had limited contact with Ms. Van Horn and had never even met her. Plaintiffs further contend that no confidential information was exchanged during the two times Mr. Scholl communicated with Ms. Van Horn. Finally, Plaintiffs assert that Defendants, unlike Plaintiffs' counsel, have had "full, unfettered access" to Ms. Van Horn "in the form of personal interviews and face-to-face communications." [Doc. 213, p. 9.]

The Court has no way to determine whether confidential information was passed between Ms. Van Horn and Mr. Scholl. However, based on the pleadings prepared by Mr. Scholl for Ms. Van Horn, it appears that Mr. Scholl provided legal advice to Ms. Van Horn before she chose not to proceed with the litigation and before she made the decision to sign the motion that he prepared. Seeking and receiving legal advice, at times, is sufficient to establish an attorney-client relationship even if the attorney is not ultimately retained. Griffen v .East Prairie, Missouri Reorganized School District No. 2., 945 F. Supp. 1251, 1254 (E.D. Mo. 1996); Roberts Aircraft Co. v. Kern, et al., 1997 WL 524894 at *3 (D. Colo. March 20, 1997).

In Griffen, the defendants also brought a motion to disqualify plaintiffs' counsel based on an alleged conflict of interest. The plaintiffs' counsel met one time with each of two individual defendants and provided written contracts to the defendants but was never retained by them. The plaintiffs opposed the disqualification request based on arguments that the defendants lacked standing, the plaintiffs' attorney never represented the plaintiffs and there was no evidence that confidential information was exchanged. Griffen, 945 F. Supp. at 1253. The Court rejected the standing argument and found that an attorney-client relationship existed. Finally, the Court noted that because it had found the existence of an attorney-client relationship, "an irrebuttable presumption that confidences were disclosed applies." Id. at 1254.

Plaintiffs' other argument that defense attorneys communicated with Ms. Van Horn prior to her dismissal, without the presence of Plaintiffs' counsel, is somewhat troubling to the Court. Plaintiffs allege multiple contacts between defense counsel and Ms. Van Horn. However, a careful review of Plaintiffs' brief and the chronology of this case appears to reflect only one alleged instance when defense counsel communicated with Ms. Van Horn before she was dismissed from this lawsuit. That contact occurred during the delivery of Mr. Scholl's sealed letter to Ms. Van Horn. [Doc. 213, Ex. A.] Plaintiffs also contend that at the November 2000 Scheduling Conference, Mr. Felker stated he had personally talked with Ms. Van Horn and that she told him Plaintiffs' law firm did not have authority to represent her in this matter. [Doc. 213, p. 10.] It is not clear from Plaintiffs' allegations who initiated this contact, whether the contact was between Ms. Van Horn and CYFD, or directly with counsel, or how extensive the communication was, nor did Defendants respond to these allegations. Plaintiffs' other allegations regarding multiple contacts between Ms. Van Horn and defense counsel are unsubstantiated in large part and confusing. Even assuming an improper

communication with a represented party, that act may constitute a violation of professional responsibility, but it surely would not serve to void Plaintiffs' attorney-client relationship with Plaintiffs' own attorney. The issue here is whether there is a conflict of interest between Plaintiffs' counsel and Plaintiffs, and not whether opposing counsel improperly communicated with a represented party.

Finally, the Court notes that Plaintiffs admitted in their brief that even if Ms. Van Horn did not supply confidential information to counsel, her mother provided confidential disclosures *about Ms. Van Horn* to counsel. Clearly, Plaintiffs' counsel should not be permitted to use such information against Ms. Van Horn whom he previously represented in the same lawsuit, nor should the remaining Plaintiffs be expected not to use information that would assist them in pursuing their claims. It is this type of conflict that precludes Plaintiffs' counsel from continuing to represent Plaintiffs.[15]

### 3. *Timeliness of the Conflict Issue:*

Plaintiffs argue that the conflict of interest allegations should have been raised at the outset of this litigation and that the failure to act promptly can warrant denial of Defendants' request. Plaintiffs repeatedly state that they are surprised by Defendants' belated argument that a conflict of interest precludes Plaintiffs' counsel from continued representation of Plaintiffs. [Doc. 199, 213.] For example, Mr. Scholl provides affidavit testimony that he was surprised at the September 2001 telephonic hearing where Defendants raised the conflict of interest issue. [Doc. 199, Ex. A., ¶ 35.]

---

[15]Plaintiffs argue that it does not matter if Mrs. Lops disclosed confidential information about Ms. Van Horn to counsel since any successor counsel also would learn of this information from Mrs. Lops. The problem with Plaintiffs' argument is their failure to recognize that successor counsel will not owe a duty of loyalty or confidentiality to Ms. Van Horn.

According to Plaintiffs, this was the first time in more than a year after the Complaint was filed that Defendants had brought up this "new" and "surprising" issue.

Plaintiffs explain that the reason they are so surprised by the conflict allegations is because Mr. Felker often told Mr. Scholl that none of Plaintiffs' attorneys represented Ms. Van Horn. [Doc. 213, p. 14; Doc. 199, p. 13.] Mr. Felker's apparent representations to Mr. Scholl that Plaintiffs were not Ms. Van Horn's attorneys and did not have the authority to file a lawsuit on her behalf are not necessarily contrary to the position that Plaintiffs had a conflict of interest that precluded them from representing Ms. Van Horn. This is particularly true in view of the Answer filed by Mr. Felker on November 17, 2000 (less than month after the First Amended Complaint was filed), in which he expressly raised the conflict issue by alleging that ***"Plaintiffs' attorneys have a conflict of interest in their attempted representation of Cristen's interests, which are diverse and opposed to the interests of Lops and his wife."*** (emphasis added.)

Plaintiffs' claims of "surprise" are unconvincing. Clearly, Plaintiffs were aware of the conflict allegations when Mr. Felker filed the CYFD Defendants' Answer. Thus, Defendants provided early information to Plaintiffs of a potential, if not actual, conflict. Further, Mr. Felker raised this issue via correspondence, on other occasions. [Doc. 213, Ex. A.] In addition, in early November 2000, Defendant Varnardo alerted Plaintiffs to the specter of a conflict, *albeit* in a slightly different context. Ms. Varnardo moved for a more definite statement as to the claims asserted against her. She had been appointed guardian *ad litem* for Ms. Van Horn in 1998, following Ms. Van Horn's allegations of sexual abuse against Mr. Lops. In Ms. Varnardo's supporting brief, she, too, raised potential conflict issues by questioning whether she was named as a defendant "solely to create a conflict in her continued representation of Cristen." Ms. Varnardo suggested that a new guardian for Ms. Van

Horn, in this civil litigation, be appointed. [Doc. 21, p. 4, fn. 2.] Thus even if Plaintiffs were unaware of this conflict at the outset, when these conflict claims subsequently arose, Plaintiffs' counsel was compelled to investigate and to withdraw. NMRA 16-109.

As explained above, Plaintiffs' arguments fail to convince the Court that an attorney-client relationship was not formed between Plaintiffs' counsel and Ms. Van Horn, nor can the Court conclude that Defendants failed to raise the possibility of a conflict in a more timely manner. Indeed, Plaintiffs were alerted to the possibility of the conflict within one month of filing their First Amended Complaint, and thereafter, in attorney correspondence. Moreover, it is unclear why Plaintiffs' counsel did not explore the possibility of a conflict from the inception of this litigation. This case seems to present obvious facts that might have signaled a conflict.[16] *See also* Restatement (3d) of the Law Governing Lawyers § 209, Representing Parties with Conflicting Interests in Civil Litigation (Proposed Final Draft No. 2, April 6, 1998); Dow v. Donovan, et al., 150 F. Supp. 2d 249, 271-72 (D. Mass. 2001) (discussing Restatement); Black v. State of Missouri, 492 F. Supp. 848, 869 (W.D. Mo. 1980) (attorney could not represent interests of either the parents or child "since his representation of the family as a whole compromised his ability to exercise independent judgment as to either 'unit'").

For these reasons, the Court concludes that Plaintiffs' counsel have a conflict of interest that precludes them from taking Ms. Van Horn's deposition and from continuing to represent Plaintiffs in this litigation. Plaintiffs themselves have conceded that if a conflict exists, it "would most likely

---

[16]When Mr. Scholl sent the sealed letter to Ms. Van Horn in December 2000, he informed her that if "that if she wished to pursue her claims against Defendants that a conflict of interests (sic) would prevent Plaintiffs' counsel from representing her in prosecuting her claims." [Doc. 213, p. 3.] If an actual conflict existed in December 2000, it is difficult to understand why Plaintiffs did not see this same potential conflict a few months earlier when they first filed the complaint.

20

require [Plaintiffs' counsel] discontinue their representation of Plaintiffs in the case." [Doc. 179, p. 5] (*citing* Rule 16-106, 16-107, 16-108 and 16-109, NMRA 2001.)

**B.     Policy Considerations**:

**_1.     Best Interests of Children:_**

Due to a litigant's right to select his or her counsel of choice, and the policy considerations in Mercedes v. Blue and FDIC v. U.S. Fire Ins. Co., the Court looks beyond the Rules of Professional Responsibility to see if disqualification is warranted. Here, several policy concerns also support disqualification of Plaintiffs' counsel, one of those being the obligation of the courts to guard the best interests of children. Courts in New Mexico have "a strong tradition of protecting a child's best interests" and to see that children are properly represented. Chisholm, 124 N.M. at 259-260, 948 P.2d at 711-12. "It is well-settled law that when the case involves children, the trial court has broad authority to fashion its ruling in 'best interests of the children.'" Id. (internal citations omitted). In fact, the "court's broad discretion to rule in the best interests of the child includes the authority to disqualify a party's chosen counsel." 124 N.M. at 260, 948 P.2d at 712 (*relying on* Sanders v. Rosenberg, 1997 NMSC 002 at ¶¶ 9-10, 122 N.M. 692, 930 P.2d 1144 (1996)).

In this case, the Court recognizes that Ms. Van Horn no longer is a minor and thus, perhaps not in need of the Court's protection. However, when this case was filed on her behalf, she was a minor, and the very conflicts discussed herein were present when Ms. Van Horn was a minor. In addition, the case involves serious allegations of physical and sexual abuse to Ms. Van Horn when she was a minor, that serve as the backdrop to her parents' claims in this litigation. Moreover, at age 18 or 19, Ms. Van Horn cannot be considered so mature or experienced now that she would be able

to handle objections on her own at a deposition, regarding possible issues of confidentiality or privilege.

## 2. Fairness of Judicial Process:

The concern for fairness of the judicial process and the integrity of the legal profession also support disqualification of Plaintiffs' counsel.

> When conflicting interests of a serious nature are at stake among joint parties, simultaneous representation by counsel undermines the fairness of the judicial process. Because of the dire consequences that joint representation may bring, a trial judge must be ever sensitive to that possibility and act accordingly, even absent an objection.

Coleman v. Smith, 814 F.2d 1142, 1147 (7th Cir. 1987). While this case no longer is in the posture of simultaneous representation of multiple parties who have conflicting interests, it is clear that Plaintiffs' counsel owe a continuing duty to Ms. Van Horn. NMRA 16-106, ABA Comment; In re Corn Derivative Antitrust Litig., 748 F.2d at 161. The Court concludes that to permit Plaintiffs' counsel to depose Ms. Van Horn and attempt to attack her credibility as they must, would undermine the fairness of the judicial process.

In addition, the integrity of the legal profession could be jeopardized if Plaintiffs' counsel were permitted to depose Ms. Van Horn and to continue as Plaintiffs' counsel.

> The Founders were also alert to the perils of conflicts of interest in the more usual sense of interests that may affect a professional's obligations to different persons among those who might be affected by his . . . performance as a professional representing interests of others. Conflicts of interest in this sense occupy a distinctive role in maintaining professionalism.

Dow, 150 F. Supp. 2d at 271.

Here, the Court is concerned that if Plaintiffs' current counsel are permitted to depose Ms. Van Horn, the duty of loyalty, trust and confidentiality owed to Ms. Van Horn could be violated; similarly, if the court simply prohibited the deposition, then counsel's duty to vigorously and zealously represent the remaining Plaintiffs would be compromised. Counsel for Plaintiffs, having previously represented Ms. Van Horn, may not now take a position adverse to her interests, nor may they seek to discredit her testimony, after representing her in this same litigation. Yet it is abundantly clear that to effectively advocate the interests of the other Plaintiffs, that is what must be done.

## II.      EXCHANGE OF DOCUMENTS WITH SUCCESSOR COUNSEL

Plaintiffs should review their office files and redact confidential information relating to Ms. Van Horn, if the source of the information was from any of the remaining Plaintiffs. The redacted files may be turned over to successor counsel, but current counsel may not convey information, evidence, advice, or suggested litigation tactics to any successor attorney, as present counsel's information would necessarily be adverse to the interests of a former client.

### Conclusion

Having considered the competing needs in this case, on the one hand, the desire to "maintain ethical standards in the legal profession," and on the other hand, "to protect the litigant's freedom to select counsel of [their] choice," I conclude that Defendants' request to preclude Plaintiffs' counsel from deposing Ms. Van Horn should be granted, and further, I find that due to a conflict of interest, the law firm of Dixon, Scholl and Bailey should be precluded from further representation of Plaintiffs in this case.

IT IS THEREFORE ORDERED that:

(1)     Defendants' request to preclude current Plaintiffs' counsel from deposing Ms. Van Horn is GRANTED;

(2)     a conflict of interest precludes the law firm of Dixon, Scholl and Bailey from further representation of Plaintiffs in this case; and

(3)     Plaintiffs' current counsel review their office files and redact confidential information relating to Ms. Van Horn, as detailed above, and transfer the redacted files to successor counsel, without conveying information, evidence, advice or suggested litigation tactics to any successor counsel.


                                                    _____
                                                    Lorenzo F. Garcia
                                                    United States Magistrate Judge